*Decision will be entered under Rule 50.*

UNITED BUSINESS CORPORATION OF AMERICA, PETITIONER, *v.* COM-MISSIONER OF INTERNAL REVENUE, RESPONDENT.

BURNS LYMAN SMITH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 24641, 25149.   Promulgated April 30, 1930.

*Edmund H. Lewis, Esq.,* for the petitioners.
*J. W. Fisher, Esq.,* and *T. P. Dudley, Jr., Esq.,* for the respondent.

810

818

## OPINION.

PHILLIPS: In addition to oral testimony the parties have submitted a voluminous stipulation. A substantial part of the stipulation is of evidence which it seems unnecessary to detail in formal findings of fact, the substance thereof or conclusion reached therefrom being stated. These proceedings involve the construction and application of sections 220 of the Revenue Act of 1918 and of the Revenue Act of 1921. This section of the 1918 Act reads:

SEC. 220. That if any corporation, however created or organized, is formed or availed of for the purpose of preventing the imposition of the surtax upon its stockholders or members through the medium of permitting its gains and profits to accumulate instead of being divided or distributed, such corporation shall not be subject to the tax imposed by section 230, but the stockholders or members thereof shall be subject to taxation under this title in the same manner as provided in subdivision (e) of section 218 in the case of stockholders of a personal service corporation, except that the tax imposed by Title III shall be deducted from the net income of the corporation before the computation of the proportionate share of each stockholder or member. The fact that any corporation is a mere holding company, or that the gains and profits are permitted to accumulate beyond the reasonable needs of the business, shall be prima facie evidence of a purpose to escape the surtax; but the fact that the gains and profits are in any case permitted to accumulate and become surplus shall not be construed as evidence of a purpose to escape the tax in such case unless the Commissioner certifies that in his opinion such accumulation is unreasonable for the purposes of the business. When requested by the Commissioner, or any collector, every corporation shall forward to him a correct statement of such gains and profits and the names and addresses of the indi-

viduals or shareholders who would be entitled to the same if divided or distributed, and of the amounts that would be payable to each.

Section 220 of the 1921 Act reads:

Sec. 220. That if any corporation, however created or organized, is formed or availed of for the purpose of preventing the imposition of the surtax upon its stockholders or members through the medium of permitting its gains and profits to accumulate instead of being divided or distributed, there shall be levied, collected, and paid for each taxable year upon the net income of such corporation a tax equal to 25 per centum of the amount thereof, which shall be in addition to the tax imposed by section 230 of this title and shall be computed, collected, and paid upon the same basis and in the same manner and subject to the same provisions of law, including penalties, as that tax: *Provided*, That if all the stockholders or members of such corporation agree thereto, the Commissioner may, in lieu of all income, war-profits and excess-profits taxes imposed upon the corporation for the taxable year, tax the stockholders or members of such corporation upon their distributive shares in the net income of the corporation for the taxable year in the same manner as provided in subdivision (a) of section 218 in the case of members of a partnership. The fact that any corporation is a mere holding company, or that the gains and profits are permitted to accumulate beyond the reasonable needs of the business, shall be prima facie evidence of a purpose to escape the surtax; but the fact that the gains and profits are in any case permitted to accumulate and become surplus shall not be construed as evidence of a purpose to escape the tax in such case unless the Commissioner certifies that in his opinion such accumulation is unreasonable for the purposes of the business. When requested by the Commissioner, or any collector, every corporation shall forward to him a correct statement of such gains and profits and the names and addresses of the individuals or shareholders who would be entitled to the same if divided or distributed and of the amounts that would be payable to each.

These sections are highly penal. Section 220 of the Revenue Act of 1918 imposes a tax upon the stockholders of a corporation, which falls within its terms, on income which they have not received. Section 220 of the Revenue Act of 1921 imposes, in addition to the tax imposed by section 230, a tax which is two and one-half times the tax imposed by that section for the year 1921 and twice the tax imposed by it for subsequent years. The severity of this penalty appears when it is contrasted with the penalty provided by section 250 (b) of the same act. There it is provided that if any part of a deficiency is " due to fraud with intent to evade tax * * * there shall be added as part of the tax 50 per centum of the total amount of the deficiency in the tax." In the case of section 220 the penalty for the year 1921 is equal to two and one-half times the tax, while the penalty for a fraudulent deficiency is but one-half, not of the tax, but of the deficiency in tax.

While the plain intent of such a statute must be given full effect, it should be strictly construed and should not be extended to cover cases which do not fall within its letter.

It is conceded that the petitioner corporation was not a " mere holding company " and the evidence fails to support the respondent's

contention that it was formed for the purpose of evading surtax. The testimony shows that in the early part of 1920 Burns Smith, a resident of Syracuse, N. Y., was the owner of two pieces of real estate in Seattle, Wash. On one of these lots was a six-story office building which had been erected in 1891 and on the other a very handsome 42-story office building, completed in 1914, which was one of the show places of the Pacific Coast. While the record is not sufficiently complete to permit precise determination of the results of the operation of these two office buildings, there is sufficient to indicate that there were losses of approximately $120,000, $110,000, $90,000, and $30,000 during the years 1915, 1916, 1917, and 1918, respectively, and a gain of $40,000 in 1919. By 1920 the war activities which had filled the office buildings of Seattle had started to subside and the future was uncertain. These buildings represented an investment by Smith of approximately $2,000,000 in excess of a mortgage thereon of $700,000 and comprised over two-thirds of his property. Smith was in ill health. His family then consisted of his wife and two infant daughters. Having observed the difficulty which arose in the partition of his father's real estate, he wished to avoid any such trouble in the event of his own death and particularly any situation which might make necessary a forced sale of this property. He was also desirous of being able to sell, in case of an emergency, undivided interests in his realty. He communicated his views to his attorney, who had also been attorney for his father and his father's estate, and who was thoroughly conversant with the situation. His attorney advised that a corporation be formed to which the realty should be transferred in exchange for shares of its capital stock. The petitioner corporation was thereupon organized and on April 1, 1920, Burns Smith transferred to it the office buildings in Seattle, at a value of $1,947,527.89, in consideration of 19,475 shares of its capital stock, the sum of $27.89 being credited to surplus. All of the evidence is to the effect that at the date of organization the only purpose in the mind of Burns Smith was to place his investment in the two office buildings in corporate form and thus make these assets more available for the purpose of sale or, in case of his death, of partition. The question of taxation, Federal or otherwise, was not discussed in the interviews between Smith and his attorney. It was not until later that Smith conceived the idea of transferring other investments to the corporation. It seems reasonably clear that the corporation was formed for perfectly sound reasons other than to permit Smith to avoid payment of surtax.

Since the corporation does not fall within the classification of a mere holding company or of one formed for the purpose of pre-

venting the imposition of surtax upon its stockholders, we need not consider in what circumstances corporations which do fall within such classification are within the provisions of section 220 of the two revenue acts. It becomes necessary to determine only whether the petitioner corporation was availed of during the years before us for the purpose stated in the statute.

The section in question recognizes the right of every corporation to keep its capital intact and provide a surplus for its reasonable needs. No corporation which is actively engaged in business is to be subjected to the penalty of the statute unless and until it permits its course of conduct to be diverted from its normal business interests by a purpose to save its stockholders from surtax. The emphasis in the statute is placed upon the purpose and if this purpose clearly appears the corporation is subject to the tax, whether the accumulation be large or small. Accumulations in excess of the needs of the business are evidence of the purpose but are not necessary to subject the corporation to the tax. This seems to us to be the necessary construction of the statutory language. To bring any case within the statute the evasion of surtax must, of course, be accomplished by means of permitting gains and profits to accumulate instead of being divided or distributed. In the instant case it seems clear that gains and profits were accumulated instead of being distributed, and that if the purpose was to use the corporation to prevent the imposition of surtax, the medium used was that set out in the statute. We think the ultimate question presented in the instant proceeding is whether this purpose existed.

Although the statute provides that certain facts shall be *prima facie* evidence of the purpose, the same purpose may appear from other facts. In the instant case the purpose to use the corporation to prevent the imposition of surtax upon its stockholder appears from the character of the transactions between it and its stockholder.

The corporation was organized for the purpose of operating the two office buildings in Seattle. Had.it confined its activities to the operation of these buildings, declaring no dividend during the years 1920 and 1921, but permitting the surplus income to be accumulated, it would seem clear that upon the record made before us with respect to real estate conditions in Seattle affecting these buildings, the corporation would not have fallen within the provisions of section 220. But we find that in 1920 the sole stockholder of the corporation transferred to it shares of stock having a value of approximately $450,000 and in 1921 transferred other shares having a value of over $400,000. The dividends upon this stock were taxable to Smith so long as he continued to hold them, but were not taxable when received by the corporation. Instead of dividends of some $80,000

which Smith reported in 1919 before the transfer was made, we find him reporting some $3,500 as dividends in 1921. Clearly the effect was to reduce the amount of income upon which Smith was subject to surtax. It is urged that these securities were transferred to the corporation in order to improve its financial condition and increase the salability of its capital stock, but in the face of this argument we find that at the close of 1920 Smith had borrowed from the corporation some $236,000 and that at the close of 1921 his borrowings totaled some $600,000. Nor is this all. In order to provide funds to make these loans the corporation was obligated on notes payable at the close of 1920 in the amount of $165,000 and at the close of 1921 in the amount of $456,000. There were similar manipulations of the funds of the corporation in subsequent years. These were not transactions designed to build up the corporation, but were perfectly designed for the purpose of evading surtax upon the income from the stocks transferred to the corporation while at the same time permitting the sole stockholder to enjoy the use of such income and substantial parts of the principal. The manner in which the corporate funds were handled seems to us to establish that, for the year 1921, the corporation was availed of for the purpose of preventing the imposition of surtax upon its stockholder through the medium of permitting its gains and profits to accumulate. We shall hereafter state the reasons which lead us to a different conclusion as to the year 1920.

It is urged that since Smith had not been subject to surtax in years prior to 1920 and to a surtax of only $3,176.15 in 1920, he had no reason to suppose there was a surtax to be avoided at the time the corporation was organized. We see no merit in this suggestion. During the years prior to 1919 the two office buildings had been operated at substantial losses and these losses had been available to Smith in preparing his tax returns. In 1919 it would appear that it was operated at some profit, but by reason of deductions of some $135,000 taken on his tax return Smith did not become subject to surtax. The nature of these deductions is unexplained, but it will be noted that the amount was substantially greater than in any period or subsequent year of which we have evidence. The reasonable conclusion is that there was a deduction in 1919 in some substantial amount which was not of a recurring nature. Except for the loss at which the building had been operated in years prior to 1919 and the substantial deduction taken in 1919, Smith would have been subject to surtax and it must have been evident to him at the time the 1919 return was prepared that he faced substantial surtaxes if he continued to hold the building and his corporate stocks and the operation of the building in 1920 resulted in any profit. The decision

which we have reached is not influenced by this probability and we speak of it only for the purpose of disposing of petitioner's argument based upon the fact that Smith paid no surtaxes in prior years.

It is urged that the securities were paid in to the corporation for its stock and thereby became capital assets. It is also urged that the loans to Smith did not affect the surplus or profits and gains of the corporation. These arguments are beside the point unless the sole evidence of purpose is that a surplus was built up which was unreasonable for the needs of the business. We have already stated that the purpose may be shown by other evidence and have already indicated that we believe these transactions constitute valuable evidence of the intention to use the corporation to avoid surtax. We may say here that we appreciate the administrative difficulties involved where purpose or intention is made the basis for levying taxes. However, the provision in question is penal in character, as we pointed out above, and the issue of intent is one which is common in such cases.

The record discloses that on May 1, 1920, Smith turned over to the corporation for its stock, stock of the Syracuse Trust Co. having a value of $254,000; that on December 20, 1920, there was a like transaction in which the corporation acquired stock of the Great Lakes Steamship Co. valued at $159,075. The dividends paid to the corporation upon this stock during 1920 appear to have been some $8,040. In view of the fact that the corporation had outstanding a mortgage of $700,000, there is some basis for the argument of petitioners that the transfer of these securities served a purpose other than merely to permit Smith to avoid surtax upon the dividends. Considering also the comparatively small amount of dividends upon which tax was thus avoided, and the penal nature of the tax imposed by section 220, we are of the opinion that there is sufficient doubt respecting the purpose of the 1920 transactions to require us to resolve that doubt against the imposition of the tax for that year under section 220. As we have pointed out above, however, no such doubt remains with respect to the purposes of the transactions which took place in 1921.

The petitioners contend that an authorized "return or its equivalent" is a prerequisite to any assessment of tax under the Revenue Act, that section 220 provides that a statement of its gains and profits may be required of any corporation, that such statement is the equivalent of a return and the only provision for making a return under section 220, that no such statement was requested of the petitioner corporation or furnished by it, that until there is a failure on its part to make such a statement no such statement may be made on its behalf by any other person and that therefore "the procedure followed by the Commissioner in reaching his determination of an occasion for tax under section 220 is unauthorized and is a denial of due

process of law." We do not understand that the law requires that a return or statement be filed under section 220 before the Commissioner may determine or assess the tax. The procedure followed, which is outlined in our findings of fact, appears to provide adequate opportunity for hearing and we fail to see wherein there was any denial of due process of law.

After both parties had submitted their testimony and rested their case counsel for the petitioner suggested that the tax might be barred by the statute of limitations. This question was not raised in either of the petitions and, although counsel asked for and was granted leave to amend his petition to raise another issue, counsel refrained from making a similar motion to raise the issue of the statute of limitations. Where such issue is raised the burden has been placed by the Board upon the Commissioner to show any extension of the statutory period. But there is no such burden and indeed no need to do so where the issue is not raised in the pleadings. In their brief the petitioners concede that waivers of the statutory time within which to assess income taxes were executed and filed by them and set out what they claim to be the form of waiver executed, and from this they argue that the form so set out in their brief does not apply to a tax assessed under section 220. It is evident that counsel for the petitioners appreciated the necessity of amending their pleadings to raise the issues upon which they relied and that their failure to do so with respect to this issue was intentional. Had the issue been raised, the waivers extending the time would undoubtedly have been placed in the record and we would have been in a position to have passed upon the question. Orderly procedure requires that the issues be clearly framed in the pleadings that both parties may have notice and an opportunity to produce their evidence. An orderly procedure is necessary if the Board is to handle the large number of cases filed with it and if proper records are to be made for review in the courts. To attempt to decide any issue with respect to the statute of limitations upon the basis of an *ex parte* statement in the brief that a certain waiver in terms therein quoted was filed would be to deny the respondent a hearing upon this issue and an opportunity to produce his evidence. (See *Chicago Railway Equipment Co.* v. *Commissioner*, 39 Fed. (2d) 378. In these proceedings argument of the cases was permitted after briefs were filed and at that time counsel for the petitioner took the position that the statute of limitations was jurisdictional and that if the statute had expired the Board had no jurisdiction of these proceedings. The proposition that a statute of limitations is a defense in bar and not a plea to the jurisdiction would seem to require no citation. However that may be, it is clear that the statute governing the proceedings before the Board treats

the statute of limitations as a defense, for it is provided in section 906(e) of the Revenue Act of 1924, as amended by section 601 of the Revenue Act of 1928, that—

If the assessment or collection of any tax is barred by any statute of limitations, the decision of the Board to that effect shall be considered as its decision that there is no deficiency in respect of such tax.

It seems clear that when the defense of the statute of limitations is raised the Board is to pass upon the merits and not dismiss for lack of jurisdiction.

At the first hearing held in Seattle, counsel for petitioners stated that he raised no contention relative to the income of the corporation as determined by respondent, either with respect to gross income or deductions. At a continuance of that hearing held in Washington both petitioners filed amended petitions, seeking a deduction for obsolescence. This claim was based upon very general statements made by certain witnesses at the Seattle hearing to the effect that during the years 1920 and 1921 the corporation would have been justified in setting up a reserve for obsolescence. This testimony appears from its context to have been based upon the opinion of these witnesses that in those years real estate values were declining in the neighborhood of the petitioners' buildings and that the future of those buildings was uncertain. A deduction from income for obsolescence is not granted because of declining values. It is to be granted because property is becoming obsolete. The Smith Building represented the highest known type of construction and, whatever may have been its future prospects with respect to declining value or yield, it was unquestionably one of the least obsolete of the city's buildings. In the years before us there was no prospect that this building would become useless or would have to be demolished to make way for some more profitable use before the termination of the 50-year life fixed by the Commissioner in allowing depreciation at 2 per cent or that it was in any sense obsolescent. The evidence discloses, however, that the Pacific Building was in a state of obsolescence and we are of the opinion that the deduction allowed by the Commissioner for depreciation of that building should be increased from the 3 per cent allowed to 6 per cent in order to reflect a reasonable allowance.

Reviewed by the Board.

> *Decision will be entered for the petitioner in Docket No. 25149. Decision will be entered under Rule 50 in Docket No. 24641.*

MARQUETTE dissents.

TRAMMELL, dissenting: I am unable to concur in the decision reached in the foregoing opinion in respect to the tax liability of the petitioner corporation for the year 1921, and can concur only in the result of the decision with respect to the tax liability of the petitioner, Burns Smith, for the year 1920. My objection goes to the conclusion as well as the fundamental reasoning upon which it is based.

The construction placed upon the statute in the prevailing opinion invokes the penalty upon a corporation which permits an accumulation of earnings, however small, and without regard to its business necessities. If there is any accumulation, importance then attaches only to the matter of intent or purpose, which, the majority holds, may be determined from any other relevant circumstance, wholly aside from and independent of the question as to the reasonableness of the accumulation for business needs.

This view, in my opinion, is unsound. The right of a corporation to accumulate from its earnings a surplus reasonably commensurate with its business needs is generally recognized not only in the business world, but by the courts. The prescribed intent should not, therefore, be imputed to a corporation engaged in doing that which it has a legitimate and lawful right to do, namely, to accumulate a reasonable surplus. The question whether there is a purpose to prevent the imposition of the surtax upon the stockholders becomes of importance only when the accumulated gains and profits exceed the reasonable needs of the business. To hold otherwise would be to penalize a corporation engaged in the accumulation of a reasonable surplus, if we should conclude from some fact, other than reasonableness of the accumulation, that in addition to the purpose of providing for its business necessities, there was also the purpose to evade the surtax.

Again, it is obvious that to whatever extent a corporation permits its gains and profits to accumulate, even though it be only one dollar, just to that extent the corporation is in fact availed of for the purpose of preventing the imposition of the surtax upon its stockholders, since that result inevitably follows. Under the above construction of the statute it might then be argued that any accumulation, whether large or small, reasonable or unreasonable, would establish the prohibited intent and bring the corporation within the provisions of section 220. This leads to an unjust and absurd result. Clearly, I think Congress never intended, by the enactment of section 220, to impede corporations in the performance of their legitimate and necessary functions, nor to impose a penalty, in the form of a burdensome tax, in the case of a corporation engaged in accumulating not more than a reasonable surplus. Escaping the surtax is

a necessary incident to the accumulation of a reasonable surplus, which the statute was not designed to prevent. However, when the accumulation exceeds the reasonable requirements of the corporate business, then a wholly different situation is presented.

It is clear that, if a corporation is formed for the purpose of evading the surtaxes upon its stockholders, but does not actually do so by accumulating a surplus of any kind, no penalty can be imposed. There is nothing upon which it can be based, yet a literal construction of the section seems to include such a case and the prevailing opinion holds that the section should be literally construed. But if a corporation is formed for the prohibited purpose and accumulates a surplus, however small, it comes within the section of the statute. In such a case the corporation is not only formed but availed of for the prohibited purpose.

In this case it is conceded that the corporation was not formed for the prohibited purpose, but for legitimate business reasons. Nevertheless, the majority finds that it was availed of for the purpose of evading the surtaxes upon the stockholders, not by reference to or on account of any unreasonable accumulation of profits, but upon another ground.

While the statute does not specifically provide that other evidence as to the purpose to escape the tax than accumulation beyond reasonable business needs might not be considered, in my opinion, the whole history of the legislation, the regulations of the Commissioner, the administration of the law, and the reports of the committees of Congress in charge of the legislation, lead to the conclusion that unless there has been an accumulation of profits beyond the reasonable needs of the business, the corporation does not come within the penal provisions of the statute. In case of ambiguity in the language used, such sources may properly be resorted to for interpretation of the Congressional intent.

Treasury Decision 2135 under the 1913 Act provided:

Sub. 2 of paragraph A. Income Tax Law Oct. 3, 1913, imposes no duty on the taxpayer to ascertain his distributive interest in the undivided profits of corporations for the purpose of making return of the amount, in addition to the amount of dividends declared on his stock, unless the Secretary of the Treasury has certified that in his opinion such accumulation is unreasonable for the needs of the business.

While the 1913, 1916, and 1917 Acts used the expression " formed or fraudulently availed of for the purpose * * *," and the 1918 Act is the first act where the expression " fraudulently " was omitted, the purpose of the various acts was the same. Under all the acts the regulations and rulings of the Commissioner required an unreasonable accumulation to bring a corporation under the section. A certification was required that the accumulation of profits

was unreasonable. The same interpretation in this respect has been given the 1918 and the 1921 Acts.

The Senate Committee on Finance, in its report on the revenue bill of 1918, with respect to section 220, said:

It was believed that the incentive to withhold from distribution as dividends *earnings not required for legitimate business uses* exists chiefly in the case of certain corporations the stock of which is very closely held, * * *. The Committee * * * has provided that in the case of any corporation formed or availed of for the purpose of permitting gains or profits to accumulate instead of being divided the income shall be taxed to the stockholders in the same manner that partnership earnings are taxed to partners (Italics supplied.)

At the time of the enactment of section 220, the evil sought to be remedied was the evasion of taxation by a corporation withholding from distribution as dividends " earnings not required for legitimate business uses," and it was undoubtedly in such a situation that Congress intended the provisions of the section to apply.

Upon the enactment of the Revenue Act of 1918, the Commissioner of Internal Revenue promulgated Regulations 45 thereunder, in which it was provided:

ART. 352. *Purpose to escape surtax.*—The application of section 220 of the statute depends upon the two elements of (*a*) purpose to escape the surtax and (*b*) unreasonable accumulation of gains and profits. * * *

ART. 353. *Unreasonable accumulation of profits.*—An accumulation of gains and profits is unreasonable if it is not required for the purpose of the business, considering all the circumstances of the case. * * *

While the regulations under the 1921 Act do not use this language, there is nothing therein inconsistent with this interpretation, and the rulings of the Commissioner under that act are substantially in accord with the rulings and regulations under the 1918 Act and previous acts as to the accumulation of surplus. In the case of a corporation engaged in business as distinguished from a mere holding company, the question has been whether the accumulation of profits was unreasonable for the business needs. See Advisory Board Memo. 2, 1 C. B. 181; O. D. 106, 1 C. B. 181; S. M. 1117, F. C. B. 182; O. D. 838, 4 C. B. 226.

After this long period of executive interpretation the Congress in subsequent revenue acts has used substantially the same language to accomplish the same purpose, which would indicate a Congressional approval thereof. This is shown more clearly by the language of the Committee reports on the various revenue bills.

In the 1921 Act, the tax is imposed directly upon the corporation instead of the stockholders. With this exception and a change in the rate of tax from 25 per cent to 50 per cent, the provisions of section 220 have been continued in all revenue acts since 1918. In the 1928 Act it appears as section 104.

In that connection, the Staff of the Joint Committee on Internal Revenue Taxation stated in its report:

> The Congress has recognized since 1913 that corporations could be formed, or availed of, for ·the purpose of evading surtax on the stockholders of such corporations.  *  *  *
>
> *        *        *        *        *        *        *
>
> The two greatest difficulties facing the administration in applying the present provision consist, first, in proving the "purpose" to evade, and, second, in proving what constitutes "the reasonable needs of the business."
>
> A provision is suggested which will tend to give some incentive to corporations to make reasonable distributions, without going to the extent of forcing unwise distributions.

And the Senate Committee on Finance, in its report on the 1928 bill, stated:

> The House bill (sec. 104), through an artificial definition of personal holding companies, attempted to strengthen the provisions of the existing law (sec. 220) relating to the evasion of surtaxes through the formation of corporations and the accumulation of income. As in the case of all arbitrary definitions, the effect was to penalize corporations which were properly building up a surplus and to fail to recognize business necessities and sound practices.  *  *  *
> Accordingly, your committee recommends that the provision of the House bill be eliminated and the provisions of existing law be restored.

The recommendation of the Finance Committee was adopted in the final passage of the 1928 Act, and here again we have unmistakable evidence that it was the legislative intent that the provisions in question should not be so construed as "to penalize corporations which were properly building up a surplus," and that in the application of those provisions recognition should be given to business necessities and sound practices.

So far as appears, the Commissioner has not changed his construction of section 220, as embodied in the regulations promulgated under the 1918 Act, namely, that the application of this section depends upon the two elements of (a) purpose to escape the surtax and (b) unreasonable accumulation of gains and profits. That the deficiencies involved in this case were determined upon that basis is disclosed by a letter addressed to the petitioner corporation under date of September 10, 1925, in which the respondent stated:

> An examination of the income and profits tax returns filed by your company for the period from April 1 to December 31, 1920, and for the calendar year 1921, together with a Revenue Agent's report of his investigation of your books and accounts for those years, discloses that you have permitted gains and profits to accumulate beyond the reasonable needs of this business. It, therefore, becomes necessary to invoke the provisions of Section 220 of the Revenue Acts of 1918 and 1921.

The prevailing opinion does not hold that the evidence supports the finding of the Commissioner that the accumulation was unreasonable, and it clearly does not support such a conclusion. On the other hand, the evidence supports the conclusion that the certificate of the Commissioner was not founded on fact and the prevailing opinion is based upon other grounds. In my opinion, the evidence must show that the facts certified are true to warrant the penalty of the statute.

The real question for consideration, in my opinion, is whether or not the corporation was formed or availed of for the purpose of preventing the imposition of the surtax upon the stockholders *through the medium of permitting the profits to accumulate beyond the reasonable needs of the business*. In my opinion both intent or purpose and an overt act are necessary to bring a corporation within the penal provisions, and the overt act is the accumulation beyond business needs, not simply an accumulation, except in a case where it is shown that a corporation is *formed* for the prohibited purpose.·

The prevailing opinion does not hold that the corporation herein was formed for the prohibited purpose, but concedes that it was not. The only question here, then, is whether the corporation was availed of for the prohibited purpose. If the evidence justifies the conclusion that the accumulation was beyond the reasonable needs of the business, then the penalty should be imposed. But if the accumulation was not unreasonable for the business necessities, we may not impute the prohibited intent because tax is avoided as an inherent result of such accumulation.

Applying these principles to the instant case, I can reach no other conclusion, under the evidence before us, than that the accumulation of earnings by the petitioner corporation in the taxable years not only was not excessive, but at the end of 1921 was still inadequate for its business needs. Since the prevailing opinion does not hold that there was an unreasonable accumulation, it might not be of importance to discuss that feature, but the testimony on this question is to my mind of such a convincing character that I refer to it briefly.

The petitioners offered a number of witnesses who were qualified in an unusual degree to testify from personal knowledge and experience with respect to the conditions existing in Seattle during and prior to the taxable years, and also to express opinions as to· the reasonableness of the corporation's accumulation of surplus.

The credibility of these witnesses is not questioned, and their testimony, which stands uncontradicted, shows that during 1920 and 1921 the petitioner corporation faced a very uncertain situation in refer-

ence to the earning of future profits, and that its financial position was precarious. The consensus of opinion of these witnesses was that the corporation should have accumulated and maintained an earned surplus greater in amount than it accumulated either for 1920 or 1921.

The record discloses that for the 9-month period of 1920, the operating expenses of the corporation amounted to $267,566, and during 1921 the operating expenses totaled $309,692, or an average for the two years of $288,629. In addition to its annual operating expenses, the corporation was obligated to make a payment of $50,000 each year on the principal of the mortgage of the L. C. Smith Building, assumed by it, exclusive of interest.

In 1920 the gains and profits of the corporation which were permitted to accumulate and become surplus, including a small paid-in surplus, amounted to only $78,315.55, which was increased at the end of 1921 to $212,222.43. The total amount accumulated to the end of 1921, the last taxable year before us, was more than $100,000 less than the amount of its operating expenses for the 9-month period of 1920, plus the annual payment on the principal of the L. C. Smith Building note. In the light of the evidence in the record, I can not regard this accumulation of earnings as unreasonable for the business needs of the corporation, nor does the majority in its opinion so conclude.

However, in the majority opinion, the question of reasonableness of the accumulation is given scant consideration. No finding is made on this point, and the case is decided on the theory that in 1921 the corporation was availed of for the purpose of preventing the imposition of the surtax on its sole stockholder, Burns Smith, for the reason that in that year Smith paid in to the corporation for shares of its capital stock large amounts of stocks and bonds of other domestic corporations, and since the petitioner corporation accumulated all of its earnings for that year, Smith thereby escaped the surtax.

As before stated, I am unable to concur in the soundness of this view, because a corporation has the unquestioned right to accumulate a reasonable surplus, and avoidance of the surtax is an inherent incident to such accumulation. Hence, the provisions of the statute should not be applied by imputing the prohibited intent to a corporation whose earnings have not been accumulated in excess of its reasonable business needs. However, I am constrained to reach the same conclusion in this case on yet another ground.

The petitioner corporation represented an investment by Smith of approximately $2,000,000 and comprised more than two-thirds of all his property. It seems to me, therefore, that it was vastly more important to Smith to safeguard his investment by placing the corporation in a sound financial position through the accumulation of a reasonable surplus than to effect the saving of a comparatively small amount of surtax. For this reason I am unable to agree with the majority conclusion that Smith's motive in providing his newly organized corporation with the means of accumulating a reasonable surplus was to escape the surtax.

So far as the merits of this case are concerned, I do not regard the borrowings by Smith from the corporation of importance. They do not indicate that the corporation's surplus was in excess of its business needs and the prevailing opinion does not consider them indicative of such fact. The surplus remained unchanged on that account. The amounts were not shown not to have been available to the corporation. They were still assets. Bona fide loans to a solvent stockholder by a corporation, where its surplus was not unreasonable for business needs, are legitimate transactions and do not in my opinion indicate the prohibited purpose. The obligations of Smith bore interest and the fact that interest was not actually paid during the year involved is not important. These transactions would be important and material only in the event the corporation had a surplus beyond its business needs. The borrowings by Smith should properly be considered in connection with all the other evidence on the question as to the reasonableness of the accumulation of profits, but the other evidence on this point is overwhelming.

There is some suggestion in the record that in the later years Smith continued to exchange securities for stock of the petitioner corporation and that the corporation continued to accumulate earnings until its surplus exceeded its reasonable needs. But the later years are not before us here, and such facts, if they be facts, are not relevant in determining the tax liability of the petitioners for the years 1920 and 1921.

For the reasons indicated, it is my opinion that our decision on this point should be for the petitioners in both cases.

MATTHEWS agrees with this dissent.