Bonnie Gladys (Mrs. F. R.) Gray, et al., [1] v. Commissioner. Gray v. Commissioner
Docket No. 15626.[1]
United States Tax Court
1952 Tax Ct. Memo LEXIS 7; 11 T.C.M. (CCH) 1213; T.C.M. (RIA) 53000; December 22, 1952
*7 1. Held: The respondent is sustained in his determination of deficiencies in income taxes for the year 1943 and his determination that all or part of the deficiency of Fred R. Gray for this year was due to fraud with intent to evade tax. 2. Held: The respondent erred in his determination that all or part of the deficiences determined against petitioner Fred R. Gray for the years 1942 and 1944 were due to fraud with intent to evade tax. 3. Held: The statute of limitations is not available as a bar to the deficiency determined in the absence of a plea of this defense. 4. Held: Where the statute of limitations is pleaded as a defense to the deficiency determined, the burden is placed upon the respondent to plead and prove any exceptions he relies upon. M. C. Chiles, Esq., for the petitioners. D. Louis Bergeron, Esq., and M. C. Maxwell, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined deficiencies in income and Victory taxes of the petitioners and penalties against petitioner Fred R. Gray, as follows: Docket
50%
Petitioner
Number
Year
Deficiency
Penalty
Bonnie Gladys Gray
15626
1943
$3,184.14
Fred R. Gray
15627
1943
2,896.77
$1,448.38
Fred R. Gray
31225
1942
984.12
492.06
Fred R. Gray
31225
1944
8,652.41
4,326.20
Bonnie Gladys Gray
31226
1944
8,652.41
The *8 issues to be determined in these consolidated proceedings are whether petitioners reported all their income during the years in question and whether any part of the deficiencies determined were due to fraud with intent to evade tax. There is also presented the question whether the deficiencies determined are barred by the statute of limitations. Findings of Fact Fred R. and Bonnie Gladys Gray, the petitioners, are husband and wife, residing in Houston, Texas. Their separate income tax returns for the years in issue, computed on the cash basis, were filed with the collector of internal revenue for the first collection district of Texas. In 1937, Fred R. Gray, hereinafter referred to as the petitioner, entered the retail liquor business in Houston, Texas. Prior to that time he had worked in a mill, operated a cafe, a grocery store, a barbecue stand and had also worked as a salesman for a wholesale liquor company. In 1937 the petitioner purchased a retail liquor store located on Crockett Street, Houston, Texas. He later moved his store to 1708 Houston Avenue in the same city. The petitioner built another store on Eleventh Street in Houston, which he sold in January 1940. In 1941 the petitioner *9 bought another liquor store situated on Washington Avenue in Houston, and during the years in question, he operated the liquor stores on Houston and Washington Avenues. The earnings from these liquor stores constituted all of the petitioner's income during the years in question. The petitioner received $3,000 from his mother in 1931. For 6 years prior to 1940, Bonnie Gladys Gray worked as a clerk with an approximate salary of $18 per week. Prior to his entrance into business, the petitioner maintained no bank accounts but kept his money on his person or in a box at home. From 1937 until mid 1940, the petitioner and his wife lived in the back part of their store on Houston Avenue. In 1940 they moved to a house in Houston, purchased by the petitioner. Final payment was made by petitioner on this property in 1943. After the petitioner went into the retail liquor business he opened a checking account at the Citizens State Bank in Houston, Texas. Thereafter he opened other accounts in other banks in Houston. In April 1942 the petitioner transferred a checking account to the Houston National Bank and at the same time rented a safety deposit box in which he put $10,000 in cash. In the operation *10 of his business the petitioner made bank deposits about once a week. He kept most of his money in his safety deposit box. The petitioner cashed checks for customers which he deposited in his bank accounts along with cash from sales. No attempt was made to separate money received from sales and that paid out on checks cashed and later put through the bank. The petitioner visited his safety deposit boxes 13 times in 1943 and 11 times in 1944. The petitioner filed financial statements with a wholesale liquor dealer for the purpose of obtaining credit on January 1, 1942, and January 1, 1945. The petitioner's net worth statement as of January 1, 1942 was $17,438.52. On January 1, 1945 the net worth of the petitioner's business was stated by him to be $77,100. The petitioner started keeping books and records when he entered the retail liquor business in 1937. The petitioner kept a separate ledger for each store, entering sales, purchases and cash payouts. Purchases of soft drinks, tobacco and other incidentals were made in cash. Whiskey was purchased by check. Clerks' salaries were paid in cash. The clerks maintained a record of the business transacted daily in each store. Cash on hand was *11 checked daily by the petitioner and daily sales were determined from cash on hand, cash payouts and cash register records. Daily purchases and sales were entered on the ledgers. At the end of each year an inventory was taken by the petitioner and the accountant who made out the income tax returns for the petitioner and his wife. The returns were prepared from the information obtained from the ledgers and the inventory. The petitioner and his wife signed the returns as prepared for them and made out a check for the amount of tax due. Whiskey was in short supply in 1942 and it remained scarce during the years in issue. The practice grew up in the trade for wholesalers to require retailers to purchase such items as rums, brandies and wines, which were not in great demand, in order to obtain whiskey. A great deal of this slow-moving merchandise had to be sold at a loss in order to be disposed of. The Office of Price Administration regulations allowed a retail whiskey dealer a mark-up of 33 1/3 per cent on his cost. A gross profit of 25 per cent could be realized by the retailers on the basis of this mark-up. The petitioner's income tax returns were investigated by respondent's agents *12 in connection with the investigation of a wholesale liquor dealer. The petitioner was indicted for criminal fraud with regard to his 1943 income tax and, over the protest of his attorney, he pleaded guilty. He was fined $8,000 and received a suspended sentence. The respondent's agents examined the petitioner's ledgers, check stubs, canceled checks and invoices. A group of petitioner's canceled checks and invoices had been destroyed in the process of moving the location of a liquor store. Duplicate invoices were obtained from wholesale concerns which sold to petitioner. The petitioner cooperated in the efforts of the agents to examine all records. The respondent's agents examined the accounts receivable records of wholesale liquor distributors in the Houston area. They also examined the records of the petitioner's bank deposits and withdrawals and his safety deposit boxes. Mathematical errors made in the petitioner's returns were corrected and they are not in issue here. The respondent determined the amount of sales for each of the years in question by eliminating what was considered nontaxable receipts from bank deposits and adding to this figure cash purchases, salaries paid, and *13 other cash expenditures. Estimated living expenses were then added to this total. The petitioner had three children by a former marriage and two children by his present wife and he supported these children during most of the period in issue. The petitioner purchased several Buick automobiles during the years in question. He belonged to a duck hunting club. The petitioner made monthly payments on his house until June 1943 when he paid the balance due of $3,412.95. In 1944 the petitioner cashed over $9,000 worth of United States bonds owned by him. The proceeds were deposited in one of his checking accounts. The petitioner's sales, as determined by the respondent, are as follows: 1942
1943
1944
$81,957.07
$119,679.61
$165,002.06 The total sales, as reported by petitioner, were as follows: 1942
1943
1944
$75,303.06
$91,278.44
$129,293.62
The petitioner's purchases, as shown by the records of wholesale liquor dealers and the petitioner's records, are as follows: Wholesalers'
Petitioner's
Year
Records
Records
1942
$ 57,468.25
$ 57,507.89
1943
84,047.82
81,519.88
1944
114,819.75
116,338.44
The respondent's agents prepared schedules of cash on hand, ownership of War Bonds, comparative profit and loss statements and *14 balance sheets pertaining to the petitioner for the years in issue. The net profit from his business, as reported by the petitioner and as determined by the respondent, is as follows: 1942
1943
1944
Per Return
As Adjusted
Per Return
As Adjusted
Per Return
As Adjusted
$5,401.34
$14,090.28
$12,385.70
$27,714.05
$15,178.79
$51,344.88 The net income reported by the petitioner and his wife and as determined by the respondent for the years in issue, is as follows: Name
Year
As Reported
As Determined
Fred R. Gray
1942
$2,500.83
$ 6,820.30
Fred R. Gray
1943
6,094.44
13,758.61
Fred R. Gray
1944
7,589.40
25,172.44
Bonnie Gladys Gray
1943
6,094.44
13,758.62
Bonnie Gladys Gray
1944
7,589.39
25,172.44
The petitioner and his wife filed their income tax returns for the calendar year 1942 on March 15, 1943. On March 15, 1944, the petitioner and his wife filed their returns for the calendar year 1943. On March 7, 1945, the petitioner and his wife filed their income tax returns for the calendar year 1944. In June 6, 1947, notices of deficiencies for the year 1943 were mailed to the petitioner and his wife. On August 8, 1950, a notice of deficiency for the years 1942 and 1944 was mailed to the petitioner. On the same date, August 8, 1950, *15 a notice of deficiency was mailed to Bonnie Gladys Gray for the year 1944. The petitioner and his wife pleaded the statute of limitations as a bar to the deficiencies determined for the years 1942 and 1944. The respondent did not plead a waiver of the statute of limitations but alleged that the petitioner wilfully filed false and fraudulent returns for each of the years in issue. The deficiency in the income tax of the petitioner for the year 1943 was due to fraud with intent to evade tax. No part of the deficiencies determined in 1942 and 1944 was due to fraud with intent to evade tax. Opinion VAN FOSSAN, Judge: The first issue involves the application of the statutes of limitations. [1] *16 *17 For the year 1942 only the petitioner's tax is in issue. The return for 1942 was filed on March 15, 1943, and the notice of deficiency was mailed on August 8, 1950. The statute of limitations bar this deficiency unless fraud is proven by the respondent, as alleged by him. For the year 1943 the taxes of both the petitioner and his wife are at issue. The returns were filed on March 15, 1944. On June 6, 1947, notices of deficiencies were mailed to both the petitioner and his wife. The respondent argues, on brief, that a consent agreement was signed by the petitioner extending the period of limitations to June 30, 1947. The statute of limitations is not pleaded by the petitioner nor does the respondent allege a waiver of the statute of limitations. However, the respondent has alleged fraud against the petitioner. Fraud is never presumed. It must be proved by clear and convincing evidence. The petitioner pleaded guilty to the charge of fraud in a criminal proceeding regarding this year's tax. His explanation that he was trying to protect his family is not such as to lead us to believe that he was innocent of the charge at the time he made the admission. Although the plea of guilty is not conclusive in itself, it carries great weight here due to the absence of an adequate explanation. Thomas J. McLaughlin, 29 B.T.A. 247. When coupled with the other evidence before us it requires us to sustain respondent's determination *18 that the income for 1943 was fraudulently understated in the amount determined. As a result, the deficiency and penalty determined against the petitioner for the year 1943 are approved. The petitioner's wife did not plead the statute of limitations as a bar to the deficiency determined against her for the year 1943. In the absence of such a plea, the statute of limitations cannot be availed of. United Business Corporation of America, 19 B.T.A. 809, affirmed 62 Fed. (2d) 754. No amendment to the petition has been made or requested upon this point. The evidence demonstrating an understatement of income requires that we sustain the deficiency determined against the petitioner's wife for 1943. Fraud was not charged as to the wife. The taxes of both the petitioner and his wife are in issue for the year 1944. The petitioner and his wife filed their returns on March 7, 1945. The respondent, on brief, argues that a consent agreement was signed by the petitioner extending the statute of limitations until June 30, 1949. However, the notice of deficiency was not mailed until August 8, 1950. The statute of limitations was pleaded by the petitioner and bars the deficiency determined unless the *19 respondent proves the fraud alleged. The petitioner's wife, it is argued, signed a consent agreement for the year 1944 extending the period of limitations until June 30, 1951, for the purposes of section 275(c) of the Internal Revenue Code. The notice of deficiency was mailed on August 8, 1950. The petitioner's wife pleaded the statute of limitations. The respondent did not plead a waiver of the statute of limitations nor did he aver facts or otherwise indicate that section 275 (c), I.R.C. was applicable or relied upon. Fraud was not alleged against the petitioner's wife. Where the statute of limitations is pleaded by the petitioner to a deficiency, it is the respondent's burden to allege affirmatively the exceptions he relies upon. Farmer's Feed Company, 10 B.T.A. 1069. As above noted, in the present instance, as to petitioner's wife, the respondent did not plead a waiver, fraud, or other exception to the statutory limitation. Nor does the evidence before us establish that a consent agreement was entered into. We conclude that the statute of limitations bars the determination as to the 1944 deficiency determined against the petitioner's wife. We turn then to the contention of fraud *20 with regard to the petitioner for the years 1942 and 1944. [2] *22 The respondent has the burden of proving fraud. In the present case the respondent relies upon the plea of guilty to the criminal fraud indictment for 1943. Speaking generally, the admission of guilt in one year is of little weight as evidence of fraud in other years, unless a pattern of fraud involving the several years is proven. The respondent also relies upon an alleged statement of petitioner to one Robbins that he could operate without the Bureau of Internal Revenue knowing everything he did. Whether this statement referred to 1943, to the years in question, or other years, is not specified. The respondent leans heavily upon his computation of petitioner's income by means of bank deposits, living expenses and cash payments to determine sales made by the petitioner. To sustain the imposition of fraud penalties, however, the intent to defraud must be found. It is a fact to be proven, as are other facts. Admittedly, the respondent's calculations demonstrate that the petitioner erred in reporting his income. Petitioner protests that the errors were due to ignorance. There is wide room for error on respondent's part in the *21 determination of sales through bank deposits of a taxpayer who cashes checks for customers in his business and runs such checks through his bank account. These calculations by respondent, standing alone, do not prove fraud. Some of petitioner's basic records vary but little from respondent's redetermination. For example, in the record of purchases, including the checking of wholesalers' records, the determinations are very close to each other. Considering the ignorance and lack of business experience of petitioner, sales reported by him were not so widely at variance. On the record here before us, it has not been shown that the petitioner fraudulently omitted sales from his records in the years 1942 and/or 1944. Looking at the facts in the light most favorable to the respondent, we hold that he has not sustained his burden of proving fraud for the years 1942 and 1944. Without proof of fraud in these years, the respondent's determinations are barred by the statute of limitations. Decisions will be entered under Rule 50. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Fred R. (F. R.) Gray, Docket Nos. 15627 and 31225, and Bonnie Gladys Gray, Docket No. 31226.↩
1. Proceedings of the following petitioners are consolidated herewith: Fred R. (F. R.) Gray, Docket Nos. 15627 and 31225, and Bonnie Gladys Gray, Docket No. 31226.↩
1. SEC. 275. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION. Except as provided in section 276 - (a) General Rule. - The amount of income taxes imposed by this chapter shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period. * * *
(c) Omission from Gross Income. - If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed. SEC. 276. SAME - EXCEPTIONS. (a) False Return or No Return. - In the case of a false or fraudulent return with intent to evade tax or of a failure to file a return the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time. (b) Waiver. - Where before the expiration of the time prescribed in section 275 for the assessment of the tax, both the Commissioner and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.
2. SEC. 293. ADDITIONS TO THE TAX IN CASE OF DEFICIENCY. * * *
(b) Fraud. - If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3612 (d) (2).