Al Mayo v. Commissioner. Asher Mayo v. Commissioner. Jacob Mayo, also known as Jack Mayo v. Commissioner.
Mayo v. Commissioner
Docket Nos. 30085-30087.
United States Tax Court
T.C. Memo 1954-23; 1954 Tax Ct. Memo LEXIS 224; 13 T.C.M. (CCH) 416; T.C.M. (RIA) 54129; April 30, 1954, Filed *224 Vincent B. Lewin, Esq., for the petitioners. Joseph F. Lawless, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent has determined deficiencies in the income tax of the petitioners and additions to tax under section 293(b) of the Internal Revenue Code for the indicated years: Deficiency
Addition
Petitioner
Docket No.
Year
in tax
to tax
Al Mayo
30085
1944
$10,596.15
$ 5,298.08
1945
14,682.54
7,341.27
Asher Mayo
30086
1944
10,868.16
5,434.08
1945
14,792.07
7,396.04
Jacob Mayo
30087
1944
28,646.25
14,323.13
1945
36,433.37
18,216.69
The issues presented by the pleadings are the correctness of the respondent's action in determining that (1) the income reported by the petitioners for 1944 and 1945 was understated, (2) the petitioners were not entitled to deductions listed on their income tax returns for 1944 and 1945, and (3) the petitioners were liable for additions to tax for fraud for 1944 and 1945 under section 293(b) of the Internal Revenue Code. Findings of Fact The petitioners are brothers *225 and were partners in Mayo Brothers, a firm manufacturing ladies' and children's underwear, during the years 1944 and 1945. The partnership was formed January 1, 1943. Jacob Mayo owned a 50 per cent interest and his brothers each owned a 25 per cent interest in the partnership. During the years 1944 and 1945 Asher Mayo and Jacob (Jack) Mayo resided in Brooklyn, New York. Al Mayo entered the Armed Forces on January 16, 1942. He went overseas on February 6, 1944, and afterwards during 1944 was stationed in New Guinea. He was discharged in May 1945 and returned to active participation in the business in June 1945. The petitioners filed Federal income tax returns for 1944 and 1945 with the collector for the second district of New York at New York. Al Mayo's return for 1944 was signed by Jack Mayo and contained the statement that Al was in the Pacific Area. The partnership kept books and records for 1944 and 1945. These books and records did not contain all the cash sales made by the partnership. It was the practice of the partnership in some instances to demand cash in payment for sales. Al Mayo did not make any cash sales in 1944 as he was in New Guinea. Generally, the partnership gave *226 no invoices or bills to the purchasers of their merchandise for cash. The partnership kept no books or records of these cash sales. Some of the customers who purchased merchandise for cash were Irving Zaref, David Lichstein, Elle Undergarment Co., Ro-El Undergarment Co., and Irving Rothberg. The purchasers would usually write a check to cash for the amount of the sale, then cash the check and turn the proceeds over to the partnership. The purchasers would indicate on the check that the check was drawn for merchandise from Mayo Brothers. Some of the purchasers prepared invoices for their cash purchases so they would have a record of the purchases. Among the cash sales not recorded on the partnership books were the following which were made to the purchasers, in the amounts and during the years as indicated: Purchaser
1944
1945
Irving Zaref
$ 6,076.75
David Lichstein
2,500.00
Elle Undergarment Co.
25,581.50
$82,363.75
Ro-El Undergarment Co.
5,892.00
In 1945 when petitioners' 1944 Federal income tax returns were being prepared, Jacob Mayo told the accountant for the partnership to make the following journal entry on the partnership books: December 31, 1944
Dr. Loans Receivable
$ 4,000.00
Dr. Mayo Brothers Draw-
ing Account
12,600.00
Cr. Sales
$16,600.00
*227 The following entry also was made by the accountant on the same day: December 31, 1944
Dr. Sales
$ 8,973.77
Cr. Accounts Payable
$ 8,973.77
The partnership's sales account in its 1945 general ledger has an entry on April 24, 1945, for $10,000 and an entry on December 31, 1945, for $1,398.84. Jacob Mayo did not furnish the accountant any records or memoranda to support the foregoing entries. In October 1948 a revenue agent requested the petitioners to produce the partnership books for examination. He was told that the petitioners were going to stand on their Constitutional rights under the Fifth Amendment and refused to produce their books. In the fall of 1952 some of the partnership books were made available for examination. The petitioners did not produce the partnership cash disbursements book for 1945 or the accounts receivable ledger. They furnished canceled checks for only two months of 1945. The partnership failed to report in its return for 1944 cash sales made during that year in the amount of $79,451.40. It failed to report in its return for 1945 cash sales made in that year in the amount of $88,255.75. Said sales were not reflected in the *228 amounts reported by the petitioners in their returns for said years as their distributive shares of partnership income. For the years herein the partnership books and records were incomplete and inadequate and its net income could not be correctly determined therefrom. Al Mayo's income tax return for 1945, and Asher Mayo's and Jacob Mayo's income tax returns for 1944 and 1945, were false and fraudulent and were made with intent to evade tax. No part of the deficiency determined against Al Mayo for the year 1944 is due to fraud with intent to evade tax. Opinion The petitioners admit that during 1944 and 1945 the partnership made sales for cash which were not recorded in the books of the partnership. However, they contend that the cash so received was used to purchase raw materials required by the partnership in the conduct of its business. They further contend that the partnership books for 1944 and 1945 reflect all cash transactions occurring in those years. In support of their position the petitioners rely on certain testimony of Jacob and Al Mayo. There is some testimony by Jacob Mayo to the effect that the partnership books reflect all the cash transactions occurring in *229 1944 and 1945, and there is some testimony by Al Mayo that the books reflect all cash transactions occurring in 1945 after his return to the business in June of that year. Jacob Mayo's testimony shows that no record was kept of the cash transactions occurring in 1944. In testifying as to his reason for making an entry in the partnership books under date of December 31, 1944, by which sales were credited with $16,600, the accountant for the partnership stated that he did so at the direction of Jacob Mayo who told him that amount represented the sum remaining from previously unrecorded cash sales after payment for all purchases made for cash. However, the accountant gave no explanation as to why under the same date he made an additional and offsetting entry by which sales were debited with $8,973.77, nor does the record otherwise indicate the reason for the entry. Obviously, if, as alleged, the $16,600 represented the portion of the previously unrecorded cash sales remaining after payment for all purchases made for cash, then any offset or reduction of that amount by a debit to sales would result in an understatement of, and not a correct reflection of, sales. The testimony of Al Mayo *230 shows that after his return to the business a record was kept of some cash sales and that these were recorded on the partnership books but that there were other cash sales as to which no record was kept and that these were not recorded on the books. In view of the foregoing, and since the instant record shows that the partnership kept no record of the purchases made for cash, we are unable to find that respondent erred in his determination as to the understatement of partnership sales to the extent of $79,451.40 for 1944 and $88,255.75 for 1945 and his consequent determination of the petitioner's distributive shares of such understated partnership income. The second issue is the correctness of the respondent's action in disallowing deductions taken by the petitioners. In lieu of allowing the itemized deductions taken by petitioners the respondent allowed them the standard deduction. Petitioners contend that in so doing the respondent has arbitrarily disallowed deductions where the payment thereof was reflected by the books and records of the partnership and where checks were actually issued and the amounts thereof charged to the capital accounts of the respective partners. The contention *231 would be well taken if the record contained evidence to support it. However, the record does not contain a single check, receipt, bill or invoice to support the payment of the items claimed as deductions. While it is true that the partnership's general ledgers for 1944 and 1945 were placed in evidence in these proceedings, the competency and accuracy of these books are questionable in view of the fact that many of the sales of the partnership during said years are omitted therefrom. While it is also true that the petitioners' drawing accounts on the partnership books show numerous debits thereto, we are unable to find from the record that the claimed deductions are reflected in such debits. The petitioners have failed to sustain their burden of proof and the respondent's determination must be sustained. Estate of J. W. Gibbs, Sr., 21 T.C. 443 (January 6, 1954). The last issue relates to the respondent's determination of fraud. The respondent has the burden of proving fraud by clear and convincing evidence. Al Mayo was in the service in 1944, stationed in New Guinea. The record does not show that he had any knowledge of the manner in which his brothers were conducting *232 the business in 1944. The only letters he received contained information about his family, and he was not advised of the business procedures followed by his brothers. We, therefore, conclude that the respondent has failed to sustain his burden of proving fraud as to Al Mayo for the year 1944. In regard to the other petitioners for the year 1944 and to all the petitioners for the year 1945, we have found that the partnership made cash sales of $79,451.40 in 1944 and $88,255.75 in 1945. The petitioners admit that the partnership made sales for cash which were not recorded in its books and which were not reflected in the distributive shares of partnership income reported by them for years. We have observed Al Mayo and Jacob Mayo as they testified and conclude that they are intelligent and shrewd businessmen and were well aware of what they were doing. Asher Mayo did not testify at the trial. The partnership took no steps to record its cash transactions as did the persons to whom it sold. Respondent has produced some of the persons who purchased merchandise from the partnership. These persons testified that the partnership insisted on receiving cash for its merchandise and refused to *233 give receipts or bills for the transactions. The petitioners invoked the Fifth Amendment and refused to produce the partnership books until late in 1952, and then they produced only a portion of them. It is evident to us that the petitioners did not wish to have their affairs fully investigated. Their own admissions and actions indicate they did not intend, except in the case of Al Mayo for 1944, to report their correct income for 1944 and 1945. We are satisfied from a consideration of the entire record on this issue that Al Mayo's 1945 income tax return and Asher Mayo's and Jacob Mayo's 1944 and 1945 income tax returns were false and fraudulent and were filed with intent to evade tax. The petitioners contend on brief that if we do not find fraud in the case of Al Mayo for 1944, then we must hold that the statutory period within which assessment may be made of the deficiency determined against him for that year has run and accordingly enter a decision of no deficiency as to him for 1944. The pleadings in the case of Al Mayo present no issue respecting the expiration of the period of limitations. The question is raised for the first time on brief. Issues not raised by the pleadings *234 will be disregarded and not considered. George R. Kemon, 16 T.C. 1026; John Gerber Co., 44 B.T.A. 26. Furthermore, he who seeks the benefit of the running of the statute of limitations must plead it and prove the facts to support it. United Business Corporation of America, 19 B.T.A. 809. Decisions will be entered under Rule 50.